UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIGROUP FINANCIAL PRODUCTS INC., <br>                                             Plaintiff, <br> -v- <br> TERA XTAL TECHNOLOGY CORP., <br>                                             Defendant. | 18-CV-4727 (JPO) <br><br> OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Citigroup Financial Products Inc. ("Citigroup") filed this contract action against Defendant Tera Xtal Technology Corp. ("TXT") on May 29, 2018. (Dkt. No. 1.) TXT failed to answer or otherwise respond to the complaint within the allotted time, and Citigroup has now moved for default judgment. (Dkt. No. 11.) For the following reasons, the motion is granted.

I. **Background**

For purposes of deciding this motion, the Court accepts as true all factual allegations pleaded in Citigroup's complaint. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam).

On August 12, 2014, Taiwanese corporation TXT received a $24,493,318 arbitration award against a third-party company, GT Advanced Technologies Limited ("GT Hong Kong"). (Dkt. No. 1 ("Compl.") ¶¶ 2, 16; *see also* Dkt. No. 13-1 at 2.) Although GT Hong Kong paid TXT $7 million in partial satisfaction of the award on September 2, 2014, GT Hong Kong then filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Hampshire, with the $17,493,318 award balance still outstanding. (Compl. ¶¶ 4–6, 19–20.)

With its arbitration award reduced to a claim against the bankruptcy estate of GT Hong Kong and certain related entities, TXT entered into a February 12, 2015 Assignment of Claim

1

Agreement (the "Agreement") with Citigroup, a Delaware corporation. (Compl. ¶¶ 6–7, 10; *see also* Dkt. No. 13-1 ("Agr.").) Under the Agreement, Citigroup purchased TXT's claim, along with certain related rights (the "Claim"), for a sum (the "Initial Purchase Price") equal to a specified percentage (the "Purchase Rate") of the total $17,493,318 face value of the Claim, less a specified amount (the "Holdback Amount") that would become payable by Citigroup only upon certain contingencies not relevant here.[1] (Compl. ¶ 23; *see also* Agr. at 3.) The Agreement, though, conditioned the sale on TXT's representation that the Claim was free of certain impairments. (Compl. ¶ 25; *see also* Agr. at 5–7.) In the event that some portion of the Claim did in fact turn out to be impaired, the Agreement granted Citigroup the right to demand that TXT repurchase, with interest, the impaired portion. (Compl. ¶ 25; *see also* Agr. at 8–9.)

As it happened, the Claim did turn out to be subject to a full impairment, and in January 2016, Citigroup sent TXT two notice letters invoking the Agreement's repurchase remedy. (Compl. ¶¶ 29–32.) After TXT failed to respond to either letter, Citigroup filed this lawsuit on May 29, 2018, asserting a single breach-of-contract claim against TXT and seeking contractual remedies. (Compl. ¶¶ 33–39.) TXT never answered Citigroup's complaint (*see* Dkt. No. 7), and on September 5, 2018, Citigroup moved for default judgment (Dkt. No. 11).

---

[1] The unredacted version of the Agreement, which reveals, among other things, the Initial Purchase Price, Purchase Rate, and Holdback Amount, has been filed under seal. (*See* Order, Sept. 6, 2018.) Citigroup represents that the redacted portions of the Agreement contain "highly proprietary" pricing information and that the "public disclosure" of this information "could result in competitive harm to Citigroup." (Dkt. No. 15 at 3.) Because the Court has no reason to doubt Citigroup's representation, and because the redacted material is relevant here only insofar as it informs the calculation of Citigroup's damages, the Court will allow the unredacted version of the Agreement to remain under seal and will refer only generally to the redacted terms.

## II. Legal Standard

When a defendant "has failed to plead or otherwise defend" a lawsuit, that defendant is in default and is deemed to have admitted all well-pleaded allegations in the plaintiff's complaint. *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 343–44 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 55(a)). At that point, the plaintiff is entitled to a default judgment if the complaint's allegations "establish [the defendant's] liability as a matter of law." *Id.* at 344 (alteration in original) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

## III. Discussion

As noted, Citigroup has asserted a single contract claim against TXT for breach of the Agreement. (Compl. ¶¶ 35–39.) This Court has subject-matter jurisdiction over the claim under 28 U.S.C. § 1332(a)(2), because Citigroup is a citizen of Delaware and New York, TXT is a citizen of the Republic of China (Taiwan), and the amount in controversy exceeds $75,000. (*See* Compl. ¶¶ 10–11.) And this Court has personal jurisdiction over TXT in connection with Citigroup's claim by virtue of a contractual forum-selection clause pursuant to which TXT consented to having all actions to "enforce, interpret or construe" the Agreement adjudicated in New York. (Agr. at 12 (formatting omitted)).

Under New York law, which governs the "Agreement and all matters arising out of or relating to it" (*id.* (formatting omitted)), "the elements of a breach of contract claim are (1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach," *Morrison v. Buffalo Bd. of Educ.*, 741 F. App'x 827, 829 (2d Cir. 2018) (summary order).

Citigroup has plainly alleged the Agreement's existence (Compl. ¶ 7; *see also* Dkt. No. 13-1), and Citigroup has further alleged its own "compli[ance] with its obligations under the Agreement" (Compl. ¶ 37). Furthermore, Citigroup's allegation that TXT refused to repurchase

the Claim after the Claim fell subject to an objection in the bankruptcy proceedings (Compl. ¶¶ 27–28, 34), states a breach of TXT's contractual promise to repurchase the Claim to the extent that it became "objected to or otherwise impaired" (Agr. at 8).

This leaves the question of damages. Even where a court concludes that a plaintiff has established the fact of a defaulting defendant's liability, that court "must 'conduct an inquiry to ascertain the amount of damages with reasonable certainty.'" *Andrews v. 27 Red Music Publ'g, LLC*, No. 15 Civ. 7544, 2019 WL 199893, at *5 (S.D.N.Y. Jan. 15, 2019) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Although this inquiry often calls for a hearing or additional briefing, these steps are "not necessary 'as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment.'" *Friedman v. Mission of the Gabonese Republic*, No. 17 Civ. 8142, 2018 WL 3094917, at *3 (S.D.N.Y. June 20, 2018) (alterations in original) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Here, the Court can easily determine the measure of Citigroup's damages without further inquiry. Under New York law, "[d]amages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 143 (2d Cir. 2016) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)). Had TXT complied with its contractual repurchase obligation under the terms of the Agreement, it would have paid Citigroup "cash in an amount equal to the product of the Impaired Portion [of the Claim] multiplied by the [Purchase Rate]," less the Holdback Amount, "together with interest thereon" at a specified annual rate "from the date [of the Agreement] until the date of . . . repayment." (Agreement at 8–9.)

Because Citigroup alleges that the Claim was impaired in its entirety (Compl. ¶ 29), Citigroup's contractual damages amount to the Initial Purchase Price (set out at Item E of Schedule I of Docket Number 13-1), plus interest at the contractual rate from the February 12, 2015 date of the Agreement to the present.[2] Because four years and eighty-three days (*i.e.*, 4.227 years) have elapsed since the Agreement was executed, the Court calculates the interest due by taking the product of the Initial Purchase Price and the contractual per annum interest rate and multiplying that product by 4.227. The sum of the Initial Purchase Price and the interest so calculated totals $11,901,443.33, and the Court concludes that Citigroup is entitled to judgment in that amount.

**IV.     Conclusion**

For the foregoing reasons, Citigroup's motion for default judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 11, enter judgment in favor of Citigroup in the amount of $11,901,443.33 plus post-judgment interest at the statutory rate, and close this case.

SO ORDERED.

Dated: May 6, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[2] Although the Agreement provides that interest shall accrue at the contractual rate "until the date of . . . repayment" (Agr. at 8), Citigroup concedes that once final judgment is entered, the statutory postjudgment interest rate, *see* 28 U.S.C. § 1961(a), rather than the contractual interest rate, applies (Dkt. No. 12 at 8).